# BOYD v. WYLY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF LOUISIANA.

Argued December 14, 15, 1887. — Decided January 9, 1888.

On a consideration of all the proof in this case the court *holds* (1) That
Boyd was a party to the proceedings which resulted in his removal from
his office as executor; and (2) that there is no reason to reverse the
decree of the court below on the merits.

THIS was a bill in equity, filed in the Circuit Court of the
United States for the Western District of Louisiana on Sep-
tember 10, 1881, on behalf of Mary E. R. Boyd, wife of Fred-
erick W. Boyd, by her son and next friend, James R. Boyd,
citizens of Wisconsin, against William G. Wyly and Charles
Egelly, of the parish of East Carroll, citizens of Louisiana, and
to which by an amendment Frederick W. Boyd, of Wisconsin,
was made an additional defendant as dative testamentary exec-
utor of the last will of James Railey, late of Adams County,
Mississippi. The bill averred that on February 1, 1860, James
Railey, the father of the complainant, made his last will, and
died in the summer of that year, leaving large estates in Mis-
sissippi, Arkansas, and Louisiana, which were disposed of by
the will, bequeathing to the complainant a certain plantation
in the parish of Carroll, Louisiana, known as the Raleigh
plantation; that James G. Carson was named in the will as
executor ; that the will was duly probated in the proper court
of the parish of Carroll, and that Carson qualified according
to law as executor, and took upon himself the burden of the
execution of the will; that an inventory and appraisement of
the property of the succession in the parish of Carroll were
made on December 12, 1860, and that the lands of said Raleigh
plantation were valued at $119,393, which was the fair and
reasonable value of the same ; that thereafter, Carson having
died, Frederick W. Boyd, the husband of the complainant, was
duly appointed dative testamentary executor of said will, and

qualified as such, and that on July 16, 1866, in due course of administration, he caused the said Raleigh plantation to be again inventoried and appraised as containing 1935 acres at $55 per acre, making in the aggregate $95,645, which was alleged to be the fair and reasonable value of the same at that time.

The bill further alleged that in July, 1868, the defendants Wyly and Egelly combined and confederated with Edward Sparrow and J. West Montgomery, attorneys at law, and with divers other persons, to defraud the complainant by procuring, under the forms of law, a sale to Wyly of the Raleigh plantation at a price far below its real value; that to accomplish the said fraud they took advantage of the temporary absence of Frederick W. Boyd, the dative testamentary executor, and instituted on July 16, 1868, proceedings in the parish court of Carroll Parish to destitute him from his said office, and to procure the appointment of Egelly as administrator of the succession; that Boyd was not made a party to the proceedings, either personally or by the appointment of a *curator ad hoc* to represent him, and had no notice of the proceedings, nor of any subsequent proceedings resulting in the sale of the Raleigh plantation to Wyly until after the same had been consummated; that on the same day on which said proceedings to destitute Boyd of the executorship were instituted (merely upon the *ex parte* affidavit of Montgomery, one of the lawyers who had instituted the proceedings) judgment was rendered, removing the executor from his office, and thereafter, on September 16, 1868, the defendant Egelly was appointed administrator of the succession, and gave bond as such, with his attorney, Montgomery, as surety.

The bill further alleged that on the same day the proceedings for the destitution of the executor were instituted and ended, July 16, 1868, an order was obtained for a new inventory and appraisement of the property of the succession, and that the defendants, Wyly and Egelly, in combination with Montgomery, caused such an inventory and appraisement to be made on September 4, 1868, by ignorant and incompetent appraisers, who corruptly and fraudulently appraised the value

of the lands of the Raleigh plantation at the insignificant sum
of $2533.05. The bill further alleged that, under the pretext
that it was necessary to sell the said plantation in order to pay
debts of said succession to the amount of $46,000, of which
$6000 were alleged to be due to Sparrow & Montgomery, as
attorneys of the estate, an order was obtained from the parish
court for the sale of the same for cash, and that, after a single
advertisement in an obscure paper, the plantation was, with-
out the knowledge of the complainant, or the said Frederick
W. Boyd, on October 20, 1868, fraudulently adjudicated to
Wyly for the said sum of $2533.05, being at the rate of $1.50
per acre for the said lands. The bill further alleged that the
fraudulent character of· the transaction was well known to
Wyly, who participated therein, and who thereby became a
purchaser of the said plantation in bad faith, and should be
held in equity to have acquired the legal title to the said
Raleigh plantation in trust for the complainant, responsible to
her from the date of his purchase for the rents and revenues
thereof. The bill further alleged that shortly after the adju-
dication of the plantation to Wyly he sued out in the proper
court a process known to the law of Louisiana as a monition,
alleging that he was an innocent third party, who had pur-
chased the plantation in good faith, and praying for an adjudi-
cation of homologation of title, which was accordingly entered.

The bill charged that under the laws of Louisiana said
judgment of homologation of title extended only to the cure
of defects of· form, and not to the validation and ratification
of acts of fraud and spoliation, such as are alleged to have
infected the pretended purchase of said property by Wyly.
The bill called for answers, but not under oath, and prayed
for a decree declaring the pretended sale of the Raleigh· plan-
tation by the said Egelly to Wyly on October 20, 1868, to be
collusive, fraudulent, null and void, and that. Wyly was a
purchaser thereof in bad faith, and that he be required to
deliver possession thereof to the complainant, to account to
her for the fruits and revenues thereof, and for general relief.

The defendants, Wyly and Egelly, answered the bill, setting
up various technical objections to its frame in bar of the relief

prayed, and also denying positively and circumstantially all allegations therein imputing or charging fraud in the sale and purchase of the said plantation.

The cause was heard upon the pleadings and full proofs, when the court found that Wyly had acquired by the proceedings referred to a valid title to the property without fraud in fact or in law on his part, and was entitled as a purchaser in good faith to the protection of the defence based upon the statutory prescription of ten years. The bill was accordingly dismissed, from which decree this appeal was prosecuted.

*Mr. Assistant Attorney General Maury* (*Mr. Robert Mott* was with him on the brief), for appellant, cited: *McLeod* v. *Drummond,* 14 Ves. 353; *Le Cesne* v. *Cottin,* 2 Martin (N. S.) 475; *Le Page* v. *New Orleans Gas Co.,* 7 Rob. La. 183; *Dufour* v. *Camfranc,* 11 Martin, 675; *S. C.* 13 Am. Dec. 360; *Pearson* v. *Grice,* 6 La. Ann. 232; *Compton* v. *Matthews,* 3 La. 141; *S. C.* 22 Am. Dec. 167; *Succession of Fisk,* 3 La. Ann. 705; *Succession of Boutte,* 30 La. Ann. 128; *O'Donagan* v. *Knox,* 11 La. Ann. 388; *Donaldson* v. *Dorsey,* 4 Martin (N. S.) 509; *Casanova* v. *Acosta,* 1 La. 187; *Lesassier* v. *Lesassier,* 15 La. 55; *Trichel* v. *Bordelon,* 9 Rob. La. 191; *Choppins* v. *Forstall,* 28 La. Ann. 303; *Pratt* v. *Northam,* 5 Mason, 95; *Michoud* v. *Girod,* 4 How. 503; *Gaines* v. *Hennen,* 24 How. 553; *Payne* v. *Hook,* 7 Wall. 425; *Dupuy* v. *Bemis,* 2 La. Ann. 509; *Shelton* v. *Tiffin,* 6 How. 163, 185; *Gillespie* v. *Twitchell,* 34 La. Ann. 288, 299; *Morton* v. *Reynolds,* 4 Rob. La. 26; *McCluskey* v. *Webb,* 4 Rob. La. 201; *Gaines* v. *De la Croix,* 6 Wall. 719; *Succession of White,* 9 Rob. La. 353; *Succession of Guilbeau,* 25 La. Ann. 474; *Quine* v. *Mayes,* 2 Rob. La. 510; *Conery* v. *Rotchford,* 30 La. Ann. 692; *Boswell* v. *Otis,* 9 How. 336, 350; *Walden* v. *Craig,* 14 Pet. 147, 154; *Doriocourt* v. *Jacobs,* 1 La. Ann. 214; *Baldwin* v. *Hale,* 1 Wall. 223; *Gaines* v. *New Orleans,* 6 Wall. 642, 713; *Sands* v. *Codwise,* 4 Johns. 536; *S. C.* 4 Am. Dec. 305; *Muse* v. *Yarborough,* 11 La. 531; *Martin* v. *Smith,* 1 Dillon, 85; *Coles* v. *Trecothick,* 9 Ves. 234; *Underhill* v. *Harwood,* 10 Ves. 209; *Copis* v. *Middleton,* 2 Madd. 410; *Stillwell* v.

*Wilkins*, Jacob, 280; *Peacock* v. *Evans*, 16 Ves. 512; *Gwynne* v. *Heaton*, 1 Bro. Ch. 1; *Osgood* v. *Franklin*, 2 Johns. Ch. 1; *S. C.* 7 Am. Dec. 513; *Scott* v. *Tyler*, 2 Dickens, 712.

*Mr. J. R. Beckwith* and *Mr. John T. Ludeling*, for appellees, cited: *Succession of Hebrard*, 18 La. Ann. 485; *Succession of Ogden*, 10 Rob. La. 457; *Brown* v. *Jacobs*, 24 La. Ann. 531; *Phelan* v. *Ax*, 25 La. Ann. 379; *Barelli* v. *Gauche*, 24 La. Ann. 324; *Janin* v. *Franklin*, 4 La. 198; *Barrett* v. *Bullard*, 19 La. 281; *Stockton* v. *Downey*, 6 La. Ann. 174; *Chambers* v. *Wortham*, 7 La. Ann. 113; *Brown* v. *Bouny*, 30 La. Ann. 174; *Davis* v. *Gaines*, 104 U. S. 386, 404; *McGoon* v. *Scales*, 9 Wall. 23, 30; *Wells* v. *Wells*, 30 La. Ann. 936; *Leffingwell* v. *Warren*, 2 Black, 599; *Croxall* v. *Shererd*, 5 Wall. 268, 289; *Dickerson* v. *Colgrove*, 100 U. S. 578; *Coddington*, v. *Railroad Co.*, 103 U. S. 409; *Lalanne* v. *Moreau*, 13 La. 431; *Wood* v. *Lee*, 21 La. Ann. 505; *Thompson* v. *Tolmie*, 2 Pet. 156; *Grignon* v. *Astor*, 2 How. 319.

Mr. Justice Matthews, after stating the case as above reported, delivered the opinion of the court.

The first point raised in argument on the part of the complainant is as to the validity of the proceeding in the court of East Carroll parish, by which Frederick W. Boyd, was, in the language of the Louisiana law, destituted of his office as dative testamentary executor, and the defendant Egelly substituted in his place. It is alleged in the bill, and insisted upon in argument, that this proceeding was had without any actual, and without any legal constructive notice to Boyd, and that it is, therefore, null and void. It is charged, as a consequence, that Egelly became, not the rightful executor, but executor *de son tort*, and that of this Wyly had notice imputed to him by law because shown by the record. It is thence argued, as an inference reasonably to be deduced, that the proceeding must have been in pursuance of the fraud charged in the bill, and, taken in connection with the subsequent proceedings and their result, constitutes proof of the fraud charged.

It appears from a transcript of the record of the proceed-

ings in question, that on July 16, 1868, there was filed in the office of the parish court for the parish of Carroll, a petition on behalf of certain creditors of the succession of James Railey, among whom are named Edward Sparrow and J. W. Montgomery, in which it was alleged that Frederick W. Boyd, after qualifying as dative testamentary executor in 1866, had leased out the plantation for one year and cultivated it himself during the year 1867; that he had never filed any account of his administration, but had appropriated and used the rents and revenues of the estate for his individual benefit, without paying any of the creditors any portion of their just dues; that he had abandoned his administration, and had no domicile or residence in the State, and was permanently absent therefrom; that he had never given any sufficient bond for the faithfulness of his administration, the sureties thereon being insolvent, and had no property in the parish, nor in the State, and that he had left no power of attorney authorizing any one to represent him in the management of the estate. The petitioners, therefore, prayed that the office of the said Boyd and the administration of the estate might be declared to be vacated and unrepresented; that Boyd be decreed to have abandoned his trust, and that, in order to protect the interest of the creditors, an administrator be appointed to finish the administration of the estate, and that Egelly be appointed thereto. This petition was signed on behalf of the petitioners by Sparrow and Montgomery as their attorneys, and was verified by the affidavit of Montgomery.

Among the papers on file in the matter of this proceeding in the parish court appears one styled "Opposition of F. W. Boyd," which is as follows:

"To the Hon. Geo. C. Benham, parish judge in and for the parish of Carroll, State of Louisiana.

"The petition of Frederick W. Boyd, a resident of the State of Mississippi, with respect shows that he is the duly appointed executor of the last will and testament of Jas. Railey, late resident of your said parish and state; that he has duly administered the property of the succession of the said Railey

since his appointment and confirmation as executor under the will.

· " Petitioner further shows that an application has been made' to your honorable court praying that E. R. Egelly, Esq., be appointed dative testamentary executor of the said succession notwithstanding your petitioner is acting as executor of the same.

" Wherefore your petitioner prays that the said application be rejected, and that the said applicant pay all costs of this proceeding and for all general relief."

This is signed by Goodrich, Pilcher, and Montgomery, as attorneys. There are no official marks upon it showing the fact or date of its being filed. The testimony of Charles M. Pilcher, one of the firm who signed it, is that the document was written by him from a memorandum given to him by his partner, Goodrich, who was the member of the firm who had charge, during the administration of Boyd, of the business of the succession of the Railey estate. The witness states that the paper was prepared and filed, as he believes, on behalf of Boyd, by virtue of authority of the firm to act for him, and he states as his belief that when prepared and filed it was upon a full sheet of paper, upon the back of which the style of the case was noted, and on which would also be indorsed the fact and date of its being filed in court, and that the paper bears evidence of having been since mutilated by this half sheet being torn off. F. F. Montgomery, the only other sur-viving member of the firm whose name appears signed' to the paper in question, was examined as a witness, and has no recollection of the paper nor of the transaction, but testifies that the document is in the handwriting of his partner, Pilcher. Another witness, R. J. London, testified that he was deputy clerk of the court at the time when these proceedings took place, and having examined the document, stated that he believed it to be the original opposition of Boyd to the ap-pointment of C. R. Egelly; that his impression is that it was marked filed, and put among the mortuary papers of the suc-cession of James Railey by himself as deputy clerk, though

the part of the sheet upon which the title was written and the filing indorsed thereon seemed to have been torn off. The handwriting is that of Charles M. Pilcher. He says: "I know that an opposition was filed, and my impression is that the document marked B is the one. The opposition I refer to was regularly filed and put away among the mortuary papers as was customary in like cases."

Frederick W. Boyd was not called by the complainant as a witness, though he was a party defendant in the cause, having entered his appearance in person, but filed no answer, permitting a decree to be taken against him by default. If the facts were as alleged on behalf of the complainant, that this proceeding, by which he was removed from his office, was without notice to him, the fact could easily have been established by his oath. The allegations contained in the petition for his removal, that he had abandoned his duties and deserted his trust as dative testamentary executor of the estate of Railey, and that he had no domicile or place of residence in the locality or in the State, are not denied by him, nor does he deny that the firm of Goodrich, Pilcher & Montgomery were authorized to oppose the application for his removal, and that they, in fact, appeared for him for that purpose. The conclusion, therefore, cannot be resisted that he was an actual party to the proceeding which resulted in his removal from his office as executor, and that the appointment of Egelly in his place, to continue the unfinished administration of the succession, was valid.

The next point urged in support of the equity of the bill is that the sum at which the plantation was valued by the appraisers and sold to the defendant Wyly is so grossly inadequate, compared with the true value of the property, as to shock the conscience of the court, and to furnish full proof of the fraudulent means by which it was effected, and of the fraudulent motives and intent of the parties in effecting it. A large mass of testimony in the case bears upon this point. It is undoubtedly true that, compared with the previous appraisements of the property and with its real value prior to the breaking out of the civil war in 1861, the price at which

the plantation was sold to Wyly appears grossly out of pro-portion, and several witnesses are called, who do testify that the appraisement was below what it ought to have been when made in 1868. On cross-examination, however, some of these very witnesses also show by their testimony that the standard in their own minds by which they test the fairness of the appraisement is their opinion of the intrinsic value of the prop-erty to hold and to use in reference to the future, and not the actual market value of the property at the time to be sold for cash.

It also abundantly appears from the evidence in the cause that immediately at the close of the war in 1865, and during that year and the following year, 1866, there were a great many speculative enterprises entered into by persons from the Northern States investing large sums of cash capital in the cultivation of cotton plantations in the expectation of large profits. These expectations were not realized; on the con-trary, almost universally they resulted in disaster, the pecu-niary losses usually absorbing the entire amount invested. A reaction immediately set in, producing a corresponding depression in values. There was scarcely any cash capital in the country for investment. In addition to this, the labor of the country was disorganized as a result of the war, and of the political and social disorders which followed it. According to the proof in the case, this disorganization seemed so complete and so hopeless as to paralyze the business and industry of the community, and to lead quite a number to such a despair of the situation as to induce them to abandon the country in order to better their fortunes by emigration to Mexico and South America. The result of the testimony on this point is stated very moderately by the District Judge, Boarman, in his opinion in this case, in the following extract (18 Fed. Rep. 355):

"In the early years after the war, the testimony in this case affirms what is historically known to be true, that the section of the state in which the Raleigh plantation is situate, was, by overflows and other physical and moral causes, almost entirely bereft of its old-time prosperity and value. The plan-

tation was greatly damaged by previous overflows, and had but little fencing, and it is shown by defendant Wyly, that he, shortly after purchasing it, expended $25,000 in improvements. Defendant has shown, whatever may have been the general causes that depreciated property on the Mississippi River in 1868, that many thousand acres of land, as valuable as the plantation in question, were sold for prices not unlike the paltry price at which Wyly bought his place. The testimony as to the scarcity of ready money, as to the price for which much valuable land sold when disposed of at forced sale, and as to the political, moral and physical bankruptcy of the country, leads me to believe that the complainant and the unpaid creditors of her father's succession were victims to the indifferent management and neglect of the executor and to the physical and moral prostration of the country, which was apparent everywhere in Louisiana in the early years following the end of the war, rather than to the acts of any of these several defendants."

The defendant Wyly took a more hopeful view, and, upon the basis of a well-grounded faith in the future of his country, he was willing to invest his money in real estate, abandoned by its owner, upon valuations made under the authority and with the sanction of the proper judicial tribunals of the locality.

We have examined with scrutiny and weighed with care all the evidence in this cause, and every consideration urged upon us by the zeal and ability of the counsel for the complainant, with a view to ascertain and secure to her her just rights. We are unable to discover any sufficient proof of the particulars of the fraud by which, as she complains, she has been wronged. The sale to the defendant Wyly, however advantageous it has proved to be to him, in our opinion has not been impeached.

The decree of the Circuit Court was, therefore, right, and is hereby

*Affirmed.*